# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARRY WYCHE** | : | **CIVIL ACTION** |
| v. | : | **NO. 19-758** |
| **DEMETRIUS TSAROUHIS,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                            **May 14, 2019**

A borrower on a defaulted car loan is suing a company which, as part of its alleged principal business purpose, purchased a deficiency judgment against the borrower and then, through its lawyers, sued the borrower to collect. The borrower does not challenge the accuracy of the debt plead in the state court complaint; he does not today dispute owing the deficiency judgment. He instead claims the company suing him in state court and its lawyers did not have the legal right to collect this debt and thus, the state court lawsuit misrepresents the nature of the debt. If so, the borrower argues the lawsuit violates the Fair Debt Collection Practices Act. The parties agree the company suing him in state court is not licensed under the Pennsylvania Consumer Credit Code. Under this Credit Code, a car buyer's obligation under an installment sale contract is not enforceable by a holder of the debt not licensed under Pennsylvania law.

After careful parsing of the Pennsylvania Consumer Credit Code and persuaded by the remedial purposes of the Fair Debt Collection Practices Act and the reasoning of several courts in other Districts facing the same issue under their state licensing laws, we agree with the defaulted borrower as to the company's inability to file a lawsuit to collect this deficiency judgment. As it lacked a license, the company could not sue on the deficiency judgment in its own name and its state court lawsuit misrepresents this fact in collecting the debt.

**I.   Alleged facts.**

Keystone Acceptance Portfolio, LLC purchased Barry Wyche's obligation to pay back a car loan to American Credit Acceptance for a car purchased from Arrow Motors, Inc.[1] Keystone purchased Mr. Wyche's debt after he defaulted, the lender repossessed the car, and the lender defined the deficiency under Pennsylvania law.[2] Keystone, through its attorneys Tsarouhis Law Group, LLC and Demetrius Tsarouhis, Esq., sued Mr. Wyche in state court to collect the deficiency judgment.[3] Keystone and its lawyers represented Keystone had the right to collect this debt.[4] Mr. Wyche does not dispute the amount of the deficiency judgment plead in the state court.

But Mr. Wyche sued Keystone and its attorneys here for violating the Fair Debt Collection Practices Act by filing suit in state court without the required license under Pennsylvania law. He specifically alleges Keystone's failure to hold a Pennsylvania license to collect this deficiency judgment renders it unable to collect the debt. He curiously failed to answer the motion to dismiss his complaint. We granted Defendants' unopposed motions to dismiss the complaint but granted Mr. Wyche leave to amend to plead a cognizable claim.[5] In his second attempt, he dropped claims challenging the relationship between Keystone and its lawyers which allegedly own it. He focuses his Amended Complaint on the Defendants' attempt to collect this defaulted debt without a license.

**II.   Analysis.**

Keystone and its lawyers move to dismiss the Amended Complaint arguing nothing in their state court collection lawsuit is misleading or violates the Act.[6] Defendants, represented by the same counsel, first argue Keystone cannot be sued as a debt collector because it is attempting to collect its own purchased debt which is already in default. They then argue Keystone has no

2

obligation to obtain a license and even if Keystone does, nothing in its lawsuit is misleading under the Act. We reject their arguments.

### A. Keystone is a debt collector.

We readily reject Defendants' first argument. As alleged, Keystone is a debt collector under the Act as Mr. Wyche alleges its principal purpose is collecting debts.[7] Our Court of Appeals defines debt collectors as those who purchase a debt after default.[8] Mr. Wyche plausibly pleads these facts.[9]

### B. Keystone's failure to hold a license voids its debt collection authority.

Keystone, through its attorneys, sued in state court to collect the deficiency judgment admittedly owed by Mr. Wyche to the lender on an installment sales contract for a car purchase. Mr. Wyche argues the collection action violates the Act because Keystone did not hold a license under Pennsylvania law to collect this debt. While the Pennsylvania General Assembly has defined several terms and pronounced the obligation unenforceable as to a person attempting to collect without a license, we cannot find courts addressing whether this licensing requirement applies to persons collecting deficiency judgments on car loans. Defendants cite one common pleas opinion from over eighteen years ago which exempts the licensing requirement without addressing the "acquiring" language in Pennsylvania law. The parties did not offer more helpful authority under Pennsylvania law but Mr. Wyche cites our colleagues in the District of New Jersey and other Districts finding the lack of the similar license states a claim against a debt collector seeking to collect a debt under the Act. After studying the Pennsylvania licensing scheme, we agree with Mr. Wyche and find he states a claim Keystone and its attorneys violated the Act by filing suit without legal authority to do so in Pennsylvania.

3

## A. The Pennsylvania licensing requirement applies to Keystone.

The parties agree the Pennsylvania Consumer Credit Code applies and provides:

(a) "**When obligation unenforceable.** — An obligation of the buyer of a motor vehicle under an installment sale contract that was consummated in this Commonwealth is not enforceable in this Commonwealth if:

....

(2) the holder was not licensed under this chapter when the holder acquired the contract."[10]

The Credit Code further requires an installment seller, sales finance company or a collector-repossessor must hold the license.[11] The first test is whether Keystone is required to be licensed when it acquired Mr. Wyche's contract. This determination is based upon how we define "holder." The General Assembly defines a holder as "[a]n installment seller or a sales finance company with the rights of the installment seller under the installment sale contract."[12] A sales finance company, in turn, is defined as including "a person in the business of acquiring . . . an installment sale contract or any interest in the contract, whether by discount, purchase or assignment of the contract, or otherwise."[13]

Keystone's state court complaint, attached to the Amended Complaint before us, admits the car seller "assigned, transferred and sent over all of its rights, title and interest in the Contract to [Keystone]."[14] Through this assignment, Keystone acquired legal title to Mr. Wyche's account and became the holder of all claims against Mr. Wyche arising under the contract including agreeing to pay Keystone's reasonable attorneys' fees incurred in collection the balance due.[15]

In a second step, we must examine whether a holder acquired an installment sale contract. The General Assembly defines "installment sale contract" as:

**(1)** A contract for the retail sale of a motor vehicle, or a contract that has a similar purpose or effect, whether or not the installment seller has retained a security interest in the motor vehicle or has taken collateral security for a buyer's obligation, if:

4

> (i) all or part of the purchase price is payable in two or more scheduled payments subsequent to the making of the contract; or
> (ii) a buyer undertakes to make two or more scheduled payments or deposits that may be used to pay all or part of the purchase price.[16]

Keystone seemingly admits Mr. Wyche's underlying debt to American Credit from the car purchase from Arrow Motors constitutes an installment sale contract but now argues this obligation ceased to be an installment sale contract after Mr. Wyche defaulted and the original lender obtained a deficiency judgment. This argument lacks authority.

The General Assembly addressed this concern in section 6261(a) of the Credit Code:

"If the proceeds of a resale under section 6260 (relating to sale of motor vehicle after repossession) are not sufficient to defray the expenses regarding the repossessed motor vehicle, including the costs under section 6256 (relating to buyer's liability for costs), the net balance due on the installment sale contract and the amount of accrued later charges authorized by this chapter, the installment seller or holder may recover the deficiency from the buyer or from any person who has succeeded to the obligations of the buyer."[17]

Keystone's purchase of the debt is an acquisition of an installment sale contract. Keystone is a sales finance company under section 6202 of the Credit Code. Under the law, Keystone must be licensed at the time of acquiring this obligation or Mr. Wyche's obligation is unenforceable as a matter of law under section 6236(a)(2).

Keystone and its attorneys rely upon a 2001 opinion from the Court of Common Pleas of Chester County in *Action Management Inc. v. Gross*.[18] In *Action Management*, Meridian Bank financed a car purchase. The purchaser defaulted. Meridian Bank apparently obtained a deficiency judgment and then sold it to Action Management Inc. In a brief analysis, the state trial court cited the first part of an earlier definition of sales finance company but inexplicably did not include the remainder of the definition which defined examples of persons who are sales finance companies as including those in the "business of acquiring credit on the security of such contracts including by assignment."[19]

5

We are not persuaded by Keystone's reliance on the 2001 court of common pleas' decision in *Action Management Inc*. For undisclosed reasons, the state court found the company acquiring the contract did not need to be licensed because it was not in the business of financing or soliciting a financing installment sales contract.[20] The state court did not address the "acquiring" aspect of the statutory definition of sales finance company. As *Action Management* does not shed light on Keystone's ability to escape licensure, we are then left to look for authority which would excuse persons acquiring deficiency judgments from this licensing requirement.

Keystone argues the licensing requirement does not apply because it is collecting a deficiency judgment. This distinction does not make sense considering the protections afforded by the licensure requirements. Nothing in the General Assembly's mandate excludes deficiency judgments. Under Keystone's argument, a party acquiring the deficiency judgment does not need to be licensed even though a lender who could otherwise sue on a deficiency judgment must be. We cannot read this distinction into the General Assembly's mandate. Nothing in the Pennsylvania law excludes licensing of holders of deficiency judgments. To the contrary, as Keystone's state court complaint admits, a party acquiring a deficiency judgment stands in the same shoes as those from whom it acquired the judgment or otherwise it would not be able to collect, pursue attorneys' fees or enforce the remedies in the underlying installment sales contract. We cannot think of a reason to allow a purchaser of a deficiency judgment to somehow have different obligations than the lender who sold the obligation allowing it the right to collect. Keystone admits as much in seeking to collect attorney's fees in state court under the loan contract.

6

Keystone acquired this debt arising from a default in the purchase and finance of a car. This is an installment sale contract under Pennsylvania law. Pennsylvania requires those persons acquiring this type of debt to be licensed. An unlicensed purchaser cannot enforce the obligation. Absent a license at the time it acquired the debt from American Credit, Keystone could not collect on this debt.

### C. Keystone misrepresenting its right to collect violates the Act.

Keystone argues even if it is not licensed, there is no reason to extend the Act to it because Mr. Wyche does not allege the state court collection action is misleading. This argument is facially attractive. Mr. Wyche apparently does not dispute (at least not in this case) his obligation under the deficiency judgment. The Act is often applied to challenge misleading representations of the amount of debt owed. We have no reason to find the amount of debt plead in the state court complaint is false or misleading. The issue is Keystone's right to collect this debt.

We agree with our colleagues in the District of New Jersey who, when reviewing this claim under New Jersey's licensing regiment, repeatedly hold a defaulted borrower can state a claim under the Act for misrepresenting the nature of the debt because the debt collector is not licensed under New Jersey law.[21] In *Veras*, Judge Kugler dismissed the same concern raised by Keystone and its attorneys today. Like Judge Kugler, we know all violations of state law violate the Act as most recently pronounced by our Court of Appeals in *Simon v. FIA Card Services, N.A.*[22] Judge Kugler went further and recognized other district courts holding the failure to register with the state as a debt collector plead a claim under the Act when the state statute prohibits that person from acting without being registered or licensed.[23]

We similarly hold Keystone's failure to obtain a license under Pennsylvania law allows a claim under the Act challenging a state court complaint alleging Keystone held this right. As Judge Kugler observed: "it would strain logic to conclude that if a debt collector is prohibited from engaging in debt collection activity in a state, he avoids the risk of liability under the [Act] so long as he conceals this fact and does not make any representation that he actually has debt collection authority."[24] We are similarly persuaded by New Jersey District Court holdings following *Veras* confirming debtors plead a plausible claim under the Act based upon the debt collector's failure to obtain a license under state law.[25]

We are not persuaded by earlier cases holding a debt collector engaging in collection activities without obtaining required state debt collection licenses do not violate the Act. For example, in *Wade v. Regional Credit Ass'n*[26], the debt collector sent an "innocuous" letter which did not threaten to take action which could not legally be taken.[27] We are not persuaded, as was the court of appeals for the Ninth Circuit over twenty-two years ago in *Wade*, a least sophisticated debtor would construe a lawsuit against him as a prudential reminder and not as a threat to take action. To the contrary, Keystone did act in filing suit; nothing about its lawsuit in state court is a "prudential reminder" like the notice in *Wade*. Given the purposes of the Act to eliminate abusive debt collection practices, we cannot find Keystone's conduct in filing a lawsuit without a license does not violate the Act.

We are also not persuaded by the magistrate judge's 2001 holding following the *Wade* reasoning in *Ferguson v. Credit Management Control, Inc.*[28] The magistrate judge found a letter merely providing information concerning the status of a debt and not containing threatening language did not violate the Act even if the debt collector is not licensed. In both *Ferguson* and *Wade*, the court found the lack of a threatening activity and exclusive use of advisory language

8

did not violate the Act. Keystone's conduct reaches far beyond a notice presenting information. It sued to collect the debt which it did not have the right to collect without a license.

Having found Keystone failed to obtain a license acquiring Mr. Wyche's debt from American Credit and thus lacked the authority to collect this debt from Mr. Wyche, we find Keystone's conduct attempted to enforce a legally unenforceable debt. Given the least sophisticated debtor standard, Keystone's and its attorneys' conduct could mislead by attempting to claim Keystone's ability to enforce a debt in Court. Mr. Wyche specifically and plausibly pleads Keystone's and its attorneys' state court complaint attempting to collect the debt for which they had no legal right to do so constitutes a false, deceptive, or misleading representation in connection with collection of the debt. He states a claim under the Act.

## III. Conclusion

Mr. Wyche states a claim under the Fair Debt Collection Practices Act against Keystone and its attorneys. We deny the motion to dismiss in the accompanying Order.

---

[1] ECF Doc. No. 8, ¶ 32 and Ex. A., p. 12 of 14.

[2] *Id.* ¶ 31.

[3] *Id.* ¶ 37.

[4] *Id.* ¶ 40.

[5] ECF Doc. No. 6.

[6] Our review today is limited to Mr. Wyche's allegations. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[7] 15 U.S.C. § 1692a(6); ECF Doc. No. 8, ¶¶ 12, 13, 16.

[8] *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 371 (3d Cir. 2018); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-404 (3d Cir. 2018).

[9] Mr. Wyche specifically pleads: "Defendants regularly collect or attempt to collect past-due and defaulted debts of natural persons allegedly owed to others which were incurred primarily for personal, family or household purposes. The principal purpose of Defendants is the purchase and collection of debts. Keystone's principal purpose is to purchase defaulted consumer debts to collect them from consumers." ECF Doc. No. 8, ¶¶ 12, 13, 16.

[10] 12 Pa. C.S.A. § 6236(a)(2).

[11] *Id.* § 6211(a).

[12] *Id.* § 6202.

[13] *Id.*

[14] ECF Doc. No. 8, Ex. A.

[15] *Id.*

[16] 12 Pa.C.S.A. § 6202.

[17] *Id.* § 6261(a).

[18] No. 99-54, 2001 WL 1202604, 51 Pa. D. & C. 4th 414 (Pa.Com.Pl. 2001).

[19] The Court of Common Pleas in *Action Management* cited an apparently earlier version of the Pennsylvania Consumer Credit Code at 69 P.S. § 603 defining a sales finance company as "a person engaged as principal, agent or broker in the business of financing or soliciting the financing of installment sale contracts made between other parties, including but not thereby

limiting the generality of the foregoing, the business of acquiring, investing in or lending money or credit on the security of such contracts or any interest therein whether by discount, purchase or assignment thereof, or otherwise."

[20] *Action Management Inc.*, 51 Pa. D. & C. 4th at 416-17.

[21] *Veras v. LVNV Funding, LLC*, No. 13-1745, 2014 WL 1050512 (D.N.J. Mar. 17, 2014).

[22] 732 F.3d 259 (3d Cir. 2013).

[23] *Veras*, 2014 WL 1050512, at *5 (citing *Fiorenzano v. LVNV Funding, LLC*, No. 11-178M, 2012 WL 2562415, at *4-5 (D.R.I. June 29, 2012); *Russey v. Rankin*, 911 F.Supp. 1449, 1459 (D.N.M. 1995); *Gaetano v. Payco of Wis., Inc.*, 774 F.Supp. 1404, 1414-15 (D. Conn. 1990)).

[24] *Veras*, 2014 WL 1050512, at *5 (citing *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F. Supp. 2d 200, 208-09 (E.D.N.Y. 2009)).

[25] *See Tomkins v. Selip & Stylianou, LLP*, No. 18-12524, 2019 WL 522143, at *4 (D.N.J. Feb. 11, 2019); *Latteri v. Mayer*, No. 17-13707, 2018 WL 2317531, at *3 (D.N.J. May 22, 2018); *Lopez v. Law Offices of Faloni & Associates, LLC*, No. 16-1117, 2016 WL 4820629, at *5 (D.N.J. Sept. 14, 2016).

[26] 87 F.3d 1098 (9th Cir. 1996).

[27] *Id.* at 1100.

[28] 140 F. Supp. 2d 1293 (M.D. Fla. 2001).